Curia, per

Wardlaw, J.
The defendant has been allowed to look into the decree of equity against his principal, and the proceedings upon which it is founded, and to object to any portion of the amount established by the decree, which he supposes not to be covered by the condition of the guardianship bond, to which he is surety. The contract which he has made cannot be altered without his consent, by the addition of any new ground of liability; but the amount of the liability which he incurred may be more or less, according to circumstances supervening the condition of his bond. In this respect, his contract does not differ from other contingent engagements.
Properly, the condition of a guardian’s bond should be drawn in such general terms as would secure the faithful performance of all his duties, whatever they may be. The bond by which this defendant is bound, however, undertakes to enumerate the duties of the guardian; and upon its terms, the defendant has a right to stand. In the enumeration, the guardian is required to deliver to the minors, severally, when they shall come of age to receive the same; “such portion or portions as shall fall due unto the said minors, or any of them, of the goods and chattels of any persons whatsoever, according to the inventory thereof, or by any other ways whatsoever.” These terms, restricted (as of right they must be) to such portions as the guardian received, or ought to have received, are large enough to include every thing belonging to one of the minors, which came to the hands of the guardian from any source whatsoever.
There is no force in the objection of the defendant, that the bond related only to the property then owned by the minors, and did not contemplate future acquisitions. Such *359 a construction would be contrary to the express terms of the instrument, and destructive of the purposes for which it was executed. The law does not limit the power of the guardian to the property owned by his ward when the trust is assumed. His control over property subsequently accruing, is no less than over that previously vested ; and as his rights and powers extend to both, so should his liability and his security.
In this State, the guardian has, to specific chattels of the ward, no such title, any more than to his realty, as authorizes him to sell and convey, without the order of a competent court. As it is his duty to preserve and increase the personalty, accounting for the use, or hire, or interest, according to its form; so he is bound to receive the rents and profits of lands, and manage them so as to make reasonable profits. If only portions of land, in kind, had come, to the wards, the surety could not have been answerable beyond profits received or lost, and waste permitted; for the lands, in substance, would have remained to answer for themselves. But if the proceeds of a sale of lands, duly authorized, came in money to the hands of the guardian, as grrardian, then, whether such money was equitably regarded as money or as land, the guardian was bound to account for it, and his surety is liable for his failure. If it was the duty of the guardian to manage the proceeds as money, then he is bound to refund it with interest, according to the rules established in the courts which settle accounts. If it was his duty to regard the fund as land, and to reinvest it in land, then from his neglect of this duty damages have ensued to the ward, at least equal to the amount to be accounted for in the other case. In either case, his failure to deliver the minor’s portion falls within the condition of his bond, and being measured in money, and charged as money by the decree in equity, comes within the liability assumed by his surety.
The true question, as to which the nature of the fund may be material, is, whether B. R. Carroll ever received the proceeds of sale as guardian. And it is only as serving to solve that question, that the bond given by B. R. Carroll, as trustee, is at all important. For if the guardian right *360 fully received, the trustee’s liability is extinguished. If that bond were to be regarded as a new security taken from, a guardian, in reference' to an accession of fortune acquired by his ward, then it would be merely accumulative. However the rights of the different sureties might be settled in a court of Equity, (where, probably, the last in order of time would be primarily liable) a court of law must, in an action against the first surety, hold him answerable for every thing covered by his contract, and leave him to pursue his remedy against the principal, or against the subsequent surety. But did the guardian ever rightfully receive the fund from the trustee?
For the plaintiff, it is contended that the right to receive and the duty to pay, united in B. R. Carroll, who was both trustee and guardian, and from the impossibility of his suing himself, the law presumed a retainer; and so the liability, by operation of law, devolved upon him as guardian, aud upon his surety in that character.
For the defendant, it is argued that the court of Equity, by taking a new bond from the trustee, aud making an order for the trustee to re-in vest the proceeds of sale, manifested its intention to do what it ordinarily conceives to be proper upon sale of minors’s property — preserve the fund unchanged in kind; that the default from which the damages have ensued, was the trustee’s neglect to obey the order directing reinvestment, and, therefore, the consequences should fall upon the surety of the trustee; that according to the purpose and order of the court of Equity, there never was a right, on the part of the guardian, to receive the fund, as there was no duty on the part of the trustee to treat the fund as money, or pay it over, without the order of the court, before the minors, severally, had attained full age.
Upon the death of Mrs. Rachael Govan Perry, leaving children, all unmarried, and all under the age of twenty-one years, the property conveyed by the deed of Bartholomew Carroll, must, according to the- trusts of that deed, have remained in the hands of the trustee to abide contingencies, either until all the children should die, (upon which event it would have passed to the right heirs of Bartholomew Carroll) or until one of the children should *361 attain tile age of twenty-one years or be married, (upon which event it was to be apportioned amongst them.) The application for sale having been made before the happening of either of these contingencies, there was good reason tor requiring bond and surety from the trustee, independent of all reference to his liability as guardian.
The court of Chancery, in England, is very careful not to change a minor’s property from real to personal, or fro'm personal to real, before the minor has attained discretion to choose for himself; because of the different forms of disposition, which have there existed, as to the two kinds of property, and the different courses of succession which prevail as to them in cases of intestacy. In these particulars, the distinctions between the two kinds of property are here almost obliterated ; but still, in case of a female minor, there is a nice distinction between the two, as to the marital rights ; and this distinction is jealously regarded by our courts of Equity. There is, however, no doubt of the power of the court of Equity, in any case, upon reasons appearing to it sufficient, to change the nature of a minor’s property ; and where that court has recognized a change, as the result of its own proceedings, a court of law would be very reluctant to scrutinize the grounds of the recognition.
Admitting, however, that the court of Equity only established the amount of B. R. Carroll’s liability, without distinguishing between his characters as guardian and as trustee, does it not appear that the liability devolved upon him as guardian ?
If no sale had taken place, and the property had been capable of actual partition, upon the marriage of Mrs. Waring, the trust estate would, in regular course, have been apportioned amongst the children, the portions of the minors being yielded to their guardian. In that case, the surety of the guardian could not have been liable for the corpus of the minors’s portions remaining in land. If a sale had been found necessary for partition, (as obviously it would have been) application would have been made to the court of Equity ; and in the usual course of that court, the shares of the minors would have been received *362 by their guardian in money; although it would have been in the power of the court to direct otherwise.
If Steele had remained trustee, and the sale had been made at his application, before the happening of the contingency upon which apportionment was directed, and the order had been made by the court of Equity, such as was made upon B. R. Carroll’s petition for sale, in that case, if the order had been obeyed, the commissioner of the court would have taken bond with security, conditioned that the trustee should “execute the trusts and limitations of the deed,” instead of the unauthorized bond, requiring payment of the money to the commissioner, which was taken from B. R. Carroll as trustee ; and Steele would have re-invested in land, (if no other directions were obtained.) Upon the happening of the contingency, partition of the land, by sale or otherwise, would have been made, and the shares of the minors would have remained in the hands of the guardian as land, or have been changed into money only by the sanction, express or implied, of the court of Equity.
If, in disobedience of the order, Steele had retained the proceeds of sale in money, he would have been answerable as trustee, and it would, probably, have been held in Equity, that he could not have discharged himself by payments to the guardian, without the order of the court which directed re-investment.
To B. R. Carroll, as trustee, the same rules apply which would have been applicable to Steele. The order of the court of Equity for his payment to himself, as guardian, was probably necessary to effect that union in himself, of the immediate right to receive, and immediate duty to pay, which, by presumption.of law, would operate a transfer of his liability from one character to the other. That order of the court is found in Chancellor Dunkin’s permission, given in January, 1842, for B. R. Carroll to set down in his account, as guardian, the sums to which his wards were respectively entitled, of the proceeds of the sale, followed, as it was, by the returns of the guardian made conformable thereto.
These returns, (although not so formal as, in correct *363 practice, they should have been,) amount to such an act as would establish the presumption of retainer in his character as guardian, even if the Chancellor’s order of January, 1842, is to be considered as giving to B. R. Carroll only the right to elect in which character he would hold the fund. Where such right of election exists, there must be some distinct act to shift the liability. 5 Mason C. C. R. 108. But when the right to receive and the duty to pay, absolutely concur, there can be no election. Whenever, by this concurrence, or by election, the retainer is established, it is no answer to his liability for the surety to the character that has received by retainer, to say that the default occurred in the other character. It is the consequences of that default which has been received. In the case of Vaughan vs. Evans, 1 Hill’s Ch. R. 428, which has suggested this answer, the officer, during his first term, was required to pay or invest; for his default, he became answerable to third persons ; and at the commencement of his second term, there was in him neither the right to receive, nor the duty to pay to himself, the sums so previously ordered out of his hands.
If, in the case before us, it should be supposed that, under the bond taken by the commissioner from B. R. Carroll, as trustee, there was a right of action in the commissioner for the trustee’s default to re-invest, or that such right of action was in the minors, suing by their next friend, it will be perceived that whatever sum may have, in either form, been recovered, would have belonged to the minors, and might have been made payable to the guardian, whenever the order of the court of Equity should have been made for such payment. The case would have been just as it now is, if judgment or decree for the amount of his default, as trustee, had been obtained against B. R. Carroll, and then the Chancellor had directed his retainer as guardian. The effect is the same as if he had, as trustee, paid to the commissioner, and then, as guardian received back. So long as his powers as guardian remained unrevoked, and his surety remained undischarged, the surety was liable for his acts within the terms of the bond.
If, by discharge under the bankrupt law, or the insol *364 vent debtor’s Act, or other legal means, the liability of the trustee had been extinguished, of course no duty to pay would have survived, and the liability could not have devolved upon the surety to the guardianship bond. But without a discharge, proof of the trustee’s inability to pay his debts, could not prevent the presumption of retainer ; for this debt may have been met, although others could not have been. Even entire destitution of means would seem not to arrest the presumption of payment, which, by law, results from the union of debtor and creditor in the same person. The cases which have been cited from our own reports — Simkins vs. Cobb, 2 Bail. 60; M‘Dowell vs. Caldwell, 2 M‘C. Ch. 55 ; Hall vs. Hall, 2 M‘C. Ch. 304 ; Joyner vs. Cooper, 2 Bail. 199 ; Schnell vs. Schroder, Bail. Eq. 334, and O’Neall vs. Herbert, M‘Mul. Eq. 496, all seem to regard the extinguishment of the debt as a necessary legal result of this union.
The motion is, therefore, dismissed.
O’Neall, Butler, and Frost, JJ. concurred.
Evans, J. dissented.